IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01734-PAB-BNB

DANIEL LEROY RHODEN,

    Plaintiff,

v.

THE CITY OF LAKEWOOD, COLORADO,
KEVIN PALETTA, in his individual capacity and official capacity,
RYAN O'HAYRE, in his individual capacity, and
STUART RUYBAL, in his individual capacity,

    Defendants.

---

## ORDER

---

This matter is before the Court on Defendants the City of Lakewood, Colorado, Kevin Paletta, Ryan O'Hayre and Stuart Ruybal's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No.30) [Docket No. 36]. This motion is fully briefed and ripe for disposition. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

The following allegations are drawn from plaintiff Daniel Leroy Rhoden's First Amended Complaint [Docket No. 30] and, for purposes of considering the motion to dismiss, are assumed to be true. On or about July 13, 2010, at 6:30 p.m., Mr. Rhoden visited the Wal-Mart located at 7455 West Colfax Avenue, Lakewood, Colorado. Docket No. 30 at 3, ¶ 12. Upon returning home, he realized he had left his backpack at the store and went back to retrieve it. *Id*. As the backpack was not in any of the store's aisles, Mr. Rhoden inquired about it at the customer service counter. Docket No. 30 at

3-4, ¶ 13. Fearing that the backpack had been stolen, Mr. Rhoden placed a call to the Lakewood Police Department to make a report. Docket No. 30 at 4, ¶ 14. Unknown to Mr. Rhoden, Wal-Mart staff had located the backpack and turned it over to the store's security personnel. Docket No. 30 at 4, ¶ 15. Wal-Mart security had searched the backpack, found what appeared (and was later determined) to be marijuana, and called the Lakewood Police Department. *Id*.; Docket No. 30 at 6, ¶ 18.

Officer Marisa Cordova was the first to arrive at the scene in response to Wal-Mart's call. Docket No. 30 at 4, ¶ 16. She searched the backpack and found the marijuana, a switchblade, and Mr. Rhoden's identification. *Id*. Wal-Mart staff informed her that Mr. Rhoden was at the customer service desk, inquiring about the backpack. *Id*. Officer Cordova decided to issue Mr. Rhoden a municipal court summons related to items found in the backpack and called a backup officer to assist her with the summons. *Id*.

Officer Ryan O'Hayre arrived as backup. *Id*. As Mr. Rhoden was leaving the store, he saw Officer O'Hayre and, believing the officer had come in response to Mr. Rhoden's call, waved and smiled at him. Docket No. 30 at 4-5, ¶ 17. Officer O'Hayre ordered Mr. Rhoden to stop, which he did. Docket No. 30 at 4-5, ¶ 17. Mr. Rhoden explained to Officer O'Hayre that he had called the police because of his missing backpack. Docket No. 30 at 5, ¶ 15. Mr. Rhoden did not act in any way to threaten Officer O'Hayre. Docket No. 30 at 5 at 4-5, ¶¶ 17-15.[1] Officer O'Hayre ordered Mr.

---

[1] The First Amended Complaint is misnumbered such that paragraphs numbered 15, 16, and 17 appear on both page 4 and page 5 and paragraphs numbered 18 appear on both page 5 and page 6.

Rhoden to place his hands on his head so he could search him for weapons.  Docket No. 30 at 5, ¶ 15.  When Mr. Rhoden complied, Officer O'Hayre wrapped his arms around Mr. Rhoden and threw him to the ground.  Docket No. 30 at 5, ¶ 16.  Mr. Rhoden's head "was the first point of contact between the parking lot concrete and the bodies" of the two individuals and it "took the brunt of the impact."  *Id*.  As a result, Mr. Rhoden suffered a fractured skull, ruptured ear drum, seizures, and a two-inch contusion to his head.  Docket No. 30 at 5, ¶ 17.  He did not have health insurance coverage at the time of incident.  *Id*.

At the hospital, Mr. Rhoden was handcuffed to his bed and was questioned by Officer Stuart Ruybal.  Docket No. 30 at 5-6, ¶ 18.  When Mr. Rhoden attempted to adjust the medical equipment to which he was attached, Officer Ruybal "grabbed the Plaintiff's wounded head and pushed it back upon the hospital bed and referred to Plaintiff as a 'skin head' and ordered him to be compliant."  *Id*.

Mr. Rhoden was subsequently issued a summons for interfering with the police based on his encounter with Officer O'Hayre.  Docket No. 30 at 6, ¶ 18.  He was also charged with possession of less than one ounce of marijuana, possession of drug paraphernalia, and possession of an illegal weapon, based on the items found in his backpack.  *Id*.  After trial in Lakewood Municipal Court, Mr. Rhoden was found not guilty on the charge of interfering with the police and guilty on the possession charges.  *Id*.

Following this incident, Mr. Rhoden has been prescribed multiple medications and has been advised that a seizure could be fatal, given his head injuries.  Docket No. 30 at 6-7, ¶ 19.  For several months following this incident, Mr. Rhoden required a wheelchair, experienced difficulty walking, and was occasionally unable to stand for

3

long periods without losing consciousness. *Id*. He has lost nearly all his hearing in his left ear. *Id*. His medical bills currently total approximately $36,000, exclusive of interest. *Id*. Mr. Rhoden's medical condition has caused him severe emotional distress. *Id*.

On July 1, 2011, Mr. Rhoden brought this case and on February 15, 2012, he filed an amended complaint against defendants the City of Lakewood, Colorado ("Lakewood"); Kevin Paletta, the Chief of Police for the City of Lakewood Police Department, in his individual and official capacities; Officer O'Hayre in his individual capacity; and Officer Ruybal in his individual capacity. Docket No. 30. Mr. Rhoden alleges that (1) defendants violated his rights under the Fourth and Fourteenth Amendments; (2) Officer O'Hayre committed abuse of process by wrongfully causing Mr. Rhoden to be detained, charged, and prosecuted; (3) Officer O'Hayre committed malicious prosecution by causing a baseless criminal charge to be maintained against Mr. Rhoden; (4) Officers O'Hayre and Ruybal falsely imprisoned Mr. Rhoden; (5) Officers O'Hayre and Ruybal committed assault and battery against Mr. Rhoden; and (6) Officers O'Hayre and Ruybal engaged in extreme and outrageous conduct that caused Mr. Rhoden severe emotional distress. On March 6, 2012, defendants filed a motion to dismiss Mr. Rhoden's claims against Lakewood and Officer Paletta pursuant to Federal Rule of Civil Procedure 12(b)(6) and to dismiss his tort claims against Officers O'Hayre and Ruybal pursuant to Federal Rule of Civil Procedure 12(b)(1).[2]

---

[2] Although defendants state that they are moving to dismiss all of Mr. Rhoden's claims, Docket No. 36 at 1, their motion does not address his constitutional claims against Officers O'Hayre and Ruybal and thus those claims survive.

Docket No. 36.

## II. STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent the defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id*. Ultimately, and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon

which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim. FED. R. CIV. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted). At the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

**III. DISCUSSION**

    **A.  Constitutional Claims**

Mr. Rhoden alleges that defendants, acting under color of state law, deprived him of his constitutional right to due process and to be free from unreasonable searches and seizures.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  The use of excessive force by law enforcement constitutes an unreasonable seizure in violation of the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386 (1989).  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  CONST. AMEND. XIV, § 1.  Government action that is so egregious as to "shock the conscience" violates the Fourteenth Amendment's guarantee of substantive due process.  *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).

Section 1983 of Title 42 creates a private right of action against state and local government officials who deprive individuals of their federal constitutional rights.  It provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable" to the injured party in law or in equity.

### *1. Claims Against Lakewood and Officer Paletta in his Official Capacity*

Defendants argue that Mr. Rhoden fails to state a claim against Lakewood and Officer Paletta in his official capacity because Mr. Rhoden does not "set forth specific facts that constitute a 'failure to train, supervise or discipline' the police officers." Docket No. 36 at 6.  Mr. Rhoden asserts that his complaint is sufficient insofar as he alleges that Lakewood failed to implement proper policies, procedures, and practices in its police department; that Officer Paletta failed to implement proper training, discipline, and supervision of police officers; and that these failures directly caused Mr. Rhoden's injuries.  Docket No. 38 at 3-4.

To state a § 1983 claim against a municipality or a municipal employee in his official capacity,[3] a plaintiff must allege:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [municipality's] employees;
> (2) Deliberate indifference to or tacit approval of such misconduct by the [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the custom . . . and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).  A single incident is generally insufficient to show municipal liability, unless the plaintiff can show that "the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued."

---

[3] "[F]or purposes of analyzing a municipality's potential liability under § 1983, acts of municipal department officials in their official capacity are equated with the acts of a municipality itself."  *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).

*Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).

It is "particularly important" that claims alleging violations of 42 U.S.C. § 1983 "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). The Tenth Circuit has held that dismissal of a § 1983 claim for failure to state a claim is appropriate where a complaint "fails to isolate the allegedly unconstitutional acts of each defendant, and thereby does not provide adequate notice as to the nature of the claims against each." *Id*. "[T]he plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal citation omitted). However, "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*. (internal citations omitted).

In *Moss*, the Tenth Circuit held that the lower court properly dismissed plaintiffs' § 1983 claim against the sheriff and the county where plaintiffs' only evidence of municipal liability for failure to train was that two deputies "were willing to assist in the illegal actions to deprive [plaintiffs] of their rights." 559 F.3d at 1169. The court found that plaintiffs "fail[ed] to allege any conduct by [the sheriff or county officials] apart from the conduct" of the individual deputies and that was insufficient to state a claim. *Id*.

Here, Mr. Rhoden alleges that:

Defendant CITY OF LAKEWOOD, Colorado . . . . is responsible for the policies, procedures and practices implemented through its various agencies,

> agents, departments, and employees, and for the injuries sustained and described in this Complaint. It is also the employer of Defendant's [sic] O'Hayre, Ruybal and Paletta at all times relevant in this Complaint. At all times relevant to this Complaint a reasonable government official would have known that his failure to properly supervise and train the Defendant officers would result in a Fourth Amendment and other state law violations.

Docket No. 30 at 1-2, ¶ 2. Mr. Rhoden further alleges that:

> At all times relevant to this Complaint, Defendant KEVIN PALETTA was an employee for the City of Lakewood Police Department and the acting Chief of Police for the City of Lakewood. In this role, Defendant Paletta was responsible for training, supervising, and disciplining Officers of the Lakewood Police Department, including Defendants' [sic] O'Hayre and Ruybal. The lack of adequate training, supervision and discipline by Defendant Paletta was a direct result of the injuries sustained by the Plaintiff. At all times relevant to this Complaint, he was acting under the color of law, statutes, ordinances, customs, and usage of the City of Lakewood. At all times relevant to this Complaint, a reasonable government official would have known that his failure to properly supervise and train the Defendant officers would result in a Fourth Amendment and other state law violations.

Docket No. 30 at 2, ¶ 3. These are the only factual allegations that Mr. Rhoden makes regarding the involvement of Lakewood or Officer Paletta. These conclusory statements are not sufficient to state a claim against either defendant. *See Lane*, 495 F.3d at 1186. As in *Moss*, Mr. Rhoden's only factual basis for the liability of Lakewood or Officer Paletta is the conduct of Officers O'Hayre and Ruybal. *See Moss*, 559 F.3d at 1169. He does not identify a specific policy, custom, or practice, nor does he allege that Officers O'Hayre and Ruybal took action pursuant to an official decision made by Lakewood or by Officer Paletta. *See Gallagher*, 587 F.3d at 1069.

Thus, Mr. Rhoden has failed to state a claim against the City of Lakewood and Officer Paletta in his official capacity.

### *2. Claims Against Officer Paletta in his Individual Capacity*

Defendants argue that Mr. Rhoden's claims against Officer Paletta in his individual capacity fail because the allegations regarding Officer Paletta's personal participation are conclusory. Docket No. 36 at 6. They also argue that the claims are barred by the doctrine of qualified immunity. Docket No. 36 at 8-10. Mr. Rhoden asserts that his pleading is sufficient and that qualified immunity does not apply because it is "patently obvious" that the lack of proper training would result in officers causing the kind of injuries he sustained. Docket No. 38 at 6.

Section 1983 does not impose respondeat superior liability. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Rather, individual liability "must be based on personal involvement in the alleged constitutional violation." *Id*. (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)) (internal quotation marks omitted). In order for the supervisor to be personally liable, an "affirmative link" must exist "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id*.

The court in *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1262 (D. Colo. 2010), held that plaintiff's allegations that the City of Aurora, the mayor, and the police chief had created and maintained an unconstitutional policy of seizing suspected burglars without objective criteria was sufficient to state a § 1983 claim for violation of the Fourth Amendment. Plaintiff alleged that the policy required officers to "automatically point[] guns at persons suspected of a burglary, forc[e] or tak[e] the suspect to the ground, to handcuff[] the suspect, and detain[] the suspect at gunpoint." *Id*. Plaintiff further

alleged that pursuant to this unconstitutional policy, police officers were not trained in the use of objective criteria in assessing when and how to detain or arrest a suspected burglar. *Id*. The court explained that "the establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's 'affirmative link' to the constitutional violation." *Id*. at 1263. (internal citations omitted). The court also stated that an affirmative link can arise where a supervisor sets in motion a series of events that proximately cause the constitutional violations. *Id*. The court held that plaintiff's allegation that defendants established or acquiesced in a specific unconstitutional policy was sufficient to plead an affirmative link between the defendants' personal acts and the plaintiff's harm. *Id*. at 1264.

Here, however, Mr. Rhoden does not plead the existence of a specific policy that was created or maintained by Officer Paletta. *See Davis*, 705 F. Supp. 2d at 1264. As stated above, his allegations are conclusory restatements of the legal standard, lacking a factual basis that could establish an affirmative link between Officer Paletta's actions and the alleged deprivation of Mr. Rhoden's constitutional rights. *See Fogarty*, 523 F.3d at 1162.

Accordingly, Mr. Rhoden fails to state a claim against Officer Paletta in his individual capacity.

### B. State Law Claims

Mr. Rhoden asserts claims of false imprisonment, assault and battery, and intentional infliction of emotional distress against Officers O'Hayre and Ruybal and claims of abuse of process and malicious prosecution against Officer O'Hayre. Docket

No. 30 at 8-10.  Defendants argue that these claims are barred by the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101, *et seq.*  Docket No. 36 at 11-13.  Mr. Rhoden counters that his claims are not barred because he has alleged that Officers O'Hayre and Ruybal acted willfully and wantonly.  Docket No. 38 at 6-8.

The CGIA waives sovereign immunity for only certain types of injuries.  Colo. Rev. Stat. § 24-10-104; *see* CONST. AMEND. XI.  The CGIA states that no public employee shall be liable in tort for an "act or omission occurring during the performance of his or her duties and within the scope of his or her employment, unless such act or omission was willful and wanton."  Colo. Rev. Stat. § 24-10-105(1).  The phrase "willful and wanton" is not defined in the CGIA.  However, Colorado courts have held that it refers to conduct that is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to the consequences, or the rights and safety of others, particularly the plaintiff." *O'Hayre v. Bd. of Educ. for Jefferson Cnty. Sch. Dist. R-1*, 109 F. Supp. 2d 1284, 1295 (D. Colo. 2000) (citing *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994)).  The CGIA also provides that "[i]n any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint" or else the complaint must be dismissed for failure to state a claim.  Colo. Rev. Stat. § 24-10-110(5)(a)-(b).

The court in *O'Hayre* held that plaintiff's claims of assault and battery survived the CGIA where plaintiff, a student, alleged that one of the defendants, a school

employee, "slamm[ed]" him into a locker and "grabbed" him "forcefully" by the arm. 109 F. Supp. 2d at 1295. The court held that the nature of the actions alleged–throwing a student against a locker, grabbing him by the arm–indicated that the defendant knew they were dangerous and yet engaged in them heedlessly without regard for the consequences. *Id*. The court, however, dismissed plaintiff's claim for abuse of process. *Id*. at 1296. Plaintiff alleged that defendants suspended him because of the incident, despite the fact that they knew he was not at fault, in order to justify the actions of the employee and the school's subsequent decision to expel plaintiff. *Id*. at 1296. The court held that plaintiff's allegations were insufficient to establish that the suspension was willful and wanton and thus to overcome the CGIA. *Id*.

The present case is akin to *O'Hayre*. *See* 109 F. Supp. 2d 1284. Mr. Rhoden alleges that Officers O'Hayre and Ruybal intentionally engaged in violent actions toward him that they must have realized were dangerous and that they acted recklessly, without regard for the consequences. *See Moody v. Ungerer*, 885 P.2d at 205. For example, he alleges that "Officer O'Hayre wrapped his arms around the Plaintiff lifting him off the ground and forcefully throwing the Plaintiff to the ground along with the officer's own body." Docket No. 30 at 5, ¶ 16. He alleges that the impact was sufficient to fracture his skull and rupture his eardrum. Docket No. 30 at 5, ¶ 17. He further alleges that "[w]ithout any direction from the medical staff, Officer Ruybal, with his hands . . . grabbed the Plaintiff's wounded head and pushed it back upon the hospital bed and referred to the Plaintiff as a 'skin head' and ordered him to be compliant." Docket No. 30 at 5-6, ¶ 17. Mr. Rhoden specifies the time and location at which these

events took place and alleges that the officers were acting intentionally.  Docket No. 30 at 5-6, ¶¶ 16-18.

In sum, Mr. Rhoden alleges unprovoked acts of intentional violence that suggest by their very nature that the actor was aware of their danger and acted recklessly, without regard for the physical or mental harm such actions cause.  *See Moody v. Ungerer*, 885 P.2d at 205.  Mr. Rhoden thus pleads a sufficient factual basis to state claims for false imprisonment, assault and battery, and intentional infliction of emotional distress against Officers O'Hayre and Ruybal.  *See* Colo. Rev. Stat. § 24-10-110.

With respect to his claims for abuse of process and malicious prosecution, Mr. Rhoden alleges that "[t]he officers then attempted to disguise their actions by bringing the criminal allegation of Interference with a Police Officer against the Plaintiff, and attempting to have the Plaintiff prosecuted for a crime he did not commit."  Docket No. 30 at 7, ¶ 20.  This allegation is similar to plaintiff's allegation in *O'Hayre* that defendants used the suspension process to justify the assault and the decision to expel plaintiff.  *See* 109 F. Supp. 2d at 1296.  Mr. Rhoden's allegations are similarly insufficient.  In contrast to the tort claims discussed above, Mr. Rhoden does not allege a factual basis establishing that Officer O'Hayre recklessly caused the criminal suit to be brought, in reckless disregard for the consequences.  *See id*.  Rather, Mr. Rhoden summarily states that Officer O'Hayre acted with the improper motive of concealing his assault.

Thus, Mr. Rhoden's claims for abuse of process and malicious prosecution are barred by the CGIA.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants The City of Lakewood, Colorado, Kevin Paletta, Ryan O'Hayre and Stuart Ruybal's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No.30) [Docket No. 36] is GRANTED with respect to all claims against The City of Lakewood and Officer Paletta and the claims for abuse of process and malicious prosecution against Officers O'Hayre and Ruybal. It is further

**ORDERED** that the motion to dismiss is DENIED with respect to the constitutional claims and the claims for false imprisonment, assault and battery, and intentional infliction of emotional distress against Officers O'Hayre and Ruybal.

DATED March 8, 2013.

                                         BY THE COURT:

                                         s/Philip A. Brimmer
                                         PHILIP A. BRIMMER
                                         United States District Judge