IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-01734-PAB-BNB

DANIEL LEROY RHODEN,

Plaintiff,

v.

RYAN O'HAYRE, in His Official and Individual Capacity, and
STUART RUYBAL, in His Official and Individual Capacity,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendants Ryan O'Hayre and Stuart Ruybal's Motion for Summary Judgment** [Doc. #77, filed 12/17/2013] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.[1] Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The plaintiff filed his First Amended Complaint on February 15, 2012 [Doc. #30] (the "Complaint"). The court has dismissed several claims and defendants [Doc. #51]. The remaining claims are for (1) violation of the plaintiff's Fourth Amendment and due process

---

[1] The Complaint [Doc. #1] was filed while the plaintiff was represented by counsel. Therefore, I do not provide the Complaint a liberal construction.

rights; (2) false imprisonment; (3) assault and battery; (4) intentional infliction of emotional distress and; (5) extreme and outrageous conduct.  The defendants seek summary judgment on all remaining claims.  The plaintiff did not respond to the defendants' Motion.

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS

1. On July 13, 2010, at approximately 6:29 p.m., City of Lakewood Police Agent Marisa Cordova ("Agent Cordova") responded to the Walmart store located at 7455 W. Colfax Ave., Lakewood, Colorado. *Motion*, Ex. A, COL 230[2]; Ex. H, ¶ 2. Agent Cordova responded to a call made by Walmart store personnel regarding a backpack found within the store that contained drugs and fireworks. The backpack had been turned into the Walmart security office. Id. at Ex. A, COL 230; Ex. H, ¶ 3.

2. Upon arrival at the Walmart store, Agent Cordova contacted loss prevention officer Nathan Kearney, who was located in the security office. Id. at Ex. A, COL 230; Ex. H, ¶ 4. Mr. Kearney gave Agent Cordova a black and red backpack, which had been found by a store employee. Id. at Ex. A, COL 230; Ex. H, ¶ 5. Agent Cordova looked inside the backpack and found several containers of a green leafy substance. Id. at Ex. A, COL 230; Ex. H, ¶ 6. The substance field tested presumptive positive for marijuana. Id. at Ex. A, COL 231; Ex. H, ¶ 6. Agent Cordova also found two pipes, rolling papers, a grinder, filter screens, a tin containing a black mass of an unknown substance, a spring loaded knife, fireworks, and a wallet. Id. at Ex. A, COL 230; Ex. H, ¶ 7. Agent Cordova looked inside the wallet and located several forms of identification for a Daniel Rhoden, date of birth May 6, 1987. Id. at Ex. A, COL 230; Ex. H, ¶ 8.

3. Agent Cordova was informed that a male at the customer service desk was inquiring about a lost backpack. Id. at Ex. A, COL 230; Ex. H, ¶ 9. Agent Cordova observed the male customer on the store's surveillance system. The male matched the photo identification for

---

[2] Exhibit A contains police reports which appear to be business records and to which the plaintiff makes no objection.

Daniel Rhoden which was found in the backpack. Id. at Ex. A, COL 230; Ex. H, ¶ 10.

  4. Agent Cordova went to her police vehicle to retrieve a court summons and to make a request for a second unit to respond to the Walmart store. Id. at Ex. A, COL 230; Ex. H, ¶ 11.

  5. At 6:45 p.m. on July 13, 2010, defendant Agent Ryan O'Hayre responded to the Walmart to assist Agent Cordova. Id. at Ex. A, COL 232. Agent O'Hayre was advised that Mr. Rhoden was on the west side of the parking lot. Id. at Ex. A, COL 230; Ex. H, ¶ 12.

  6. Agent O'Hayre observed a white male wearing a black tee shirt and shorts. The man was identified as Mr. Rhoden. Agent O'Hayre observed Mr. Rhoden walking quickly toward the parking lot. Id. at Ex. A, COL 232. Agent O'Hayre transmitted over his police radio that he was in contact with Daniel Rhoden. Id. at Ex. A, COL 230.

  7. Mr. Rhoden began to run when he saw Agent O'Hayre. As Agent O'Hayre approached, Mr. Rhoden opened a car trunk and yelled at Agent O'Hayre, "Why are you running after me?" Agent O'Hayre asked Mr. Rhoden to close the trunk of the vehicle because Agent O'Hayre did not know what was inside. Mr. Rhoden slammed the trunk of the vehicle, walked around to the passenger side of the vehicle, and began to open the passenger door. Agent O'Hayre asked Mr. Rhoden to not open the passenger door. Mr. Rhoden became more upset and quickly walked toward the front of the vehicle. Agent O'Hayre observed that Mr. Rhoden was very agitated and was pacing around and waving his arms in the air. Agent O'Hayre observed that Mr. Rhoden continued to yell about having lost his backpack. Id. at Ex. A, COL 232.

  8. Agent Cordova observed Mr. Rhoden gesturing up and down with his arms in an exaggerated motion, and he appeared to be angry. Id. at Ex. A, COL 230; Ex. H, ¶ 16. Agent Cordova also observed Mr. Rhoden throw a small object at an adjacent vehicle. Id. at Ex. A,

COL 230; Ex. H, ¶ 14. The object was later identified by Agent Cordova as a set of keys. Id. at Ex. A, COL 231; Ex. H, ¶ 15.

      9. Agent O'Hayre intended to calm Mr. Rhoden and question him about the contents of the backpack. During his contact with Mr. Rhoden, Agent O'Hayre was aware that drugs had been located in the backpack. Due to Mr. Rhoden's behavior and the drugs found in the backpack, Agent O'Hayre believed that Mr. Rhoden was under the influence of narcotics. Agent O'Hayre also believed Mr. Rhoden was carrying a weapon. Id. at Ex. A, COL 232.

      10. Agent O'Hayre told Mr. Rhoden to turn around and place his hands on his head because Agent O'Hayre wanted to check Mr. Rhoden for weapons. Agent O'Hayre prepared to grab Mr. Rhoden's hands when they reached the top of his head. Agent O'Hayre noticed that Mr. Rhoden's tee shirt was not tucked in. As Mr. Rhoden began to turn around, he immediately and quickly reached down to the front of his shorts with both hands. Agent O'Hayre believed Mr. Rhoden was reaching for a weapon in his shorts. Id. at Ex. A, COL 232.

      11. Agent O'Hayre wrapped both of his arms around Mr. Rhoden in an attempt to prevent Mr. Rhoden from pulling his hands back out of the front of his shorts. Id. at Ex. A, COL 232-233. Mr. Rhoden told Agent O'Hayre that he "had one" which Agent O'Hayre interpreted to mean that the plaintiff possessed a weapon. Agent O'Hayre reasonably believed Mr. Rhoden was holding a weapon in his hands on the inside of the front of his shorts. Id. at Ex. A, COL 233.

      12. Agent O'Hayre and Mr. Rhoden fell to the ground. Id. at Ex. A, COL 230; Ex. H, ¶ 17. Agent O'Hayre brought Mr. Rhoden down to the ground in order to protect himself. Id. at Ex. A, COL 233.

13. Agent Cordova ran towards Agent O'Hayre and was informed by Agent O'Hayre that Mr. Rhoden was reaching for what he believed was a weapon, in the front of his waistband. Id. at Ex. A, COL 230; Ex. H, ¶ 18. Agent Cordova identified the individual as Daniel Rhoden who is the same person as depicted on the driver's license in the backpack. Id. at Ex. A, COL 230.

14. Mr. Rhoden was handcuffed. Id. at Ex. A, COL 230 and 233; Exhibit H, ¶ 19. After he was handcuffed, Agent Cordova saw a black folding knife clipped to the front of Mr. Rhoden's shorts. Id. at Ex. A, COL 230; Ex. H, ¶ 20.

15. Paramedics were summoned to the Walmart. Id. at Ex. A, COL 230; Ex. H, ¶ 21. The knife was removed by the responding paramedics and placed on the ground where Agent Cordova photographed it. Id. at Ex. A, COL 230; Ex. H, ¶ 22. Mr. Rhoden was transported to St. Anthony's Central Hospital by West Metro paramedics. Id. at Ex. A, COL 235; Ex. H, ¶ 23.

16. On July 13, 2010, at approximately 6:29 p.m., City of Lakewood Police Agent Stuart Ruybal was dispatched to the Wal-Mart located at 7455 West Colfax Avenue. Id. at Ex. A, 237; Ex. G, ¶ 2. Upon arriving at Wal-Mart, Lakewood Police Department Sergeant Cohn requested Agent Ruybal to follow a West Metro Fire Department Ambulance which was transporting Mr. Rhoden to St. Anthony Central Hospital. Id. at Ex. A, COL 237; Ex. G, ¶ 3. Agent Ruybal followed the West Metro Fire Department Ambulance to St. Anthony's Central Hospital. Id. at Ex. A, COL 237; Ex. G, ¶ 4.

17. While at St. Anthony's Central Hospital, Agent Ruybal observed Mr. Rhoden disobey the orders of hospital staff. Id. at Ex. A, COL 237; Ex. G, ¶ 5. Mr. Rhoden admitted to Agent Ruybal that he reached down the front of his shorts and tried to pull out his pocket knife.

Id. at Ex. A, COL 237; Ex. G, ¶ 6. Agent Ruybal did not grab Mr. Rhoden's head or push it back into the hospital bed at any time. Id. at Ex. G, ¶ 7; Ex. H, ¶ 26. Agent Ruybal did not refer to the plaintiff as a skin head at any time. Id. at Ex. G, ¶ 8; Ex. H, ¶ 27.

18. Agent Cordova went to St. Anthony's Hospital to photograph Mr. Rhoden. Id. at Ex. H, ¶ 24. Agent Ruybal was present while Agent Cordova photographed Mr. Rhoden. Id. at Ex. H, ¶ 25.

19. Agent Cordova issued Mr. Rhoden municipal summons L564559 for Possession of Marijuana, Possession of Drug Paraphernalia, Possession of an Illegal Weapon, and Interference with a Police Officer. Id. at Ex. A, COL 231; Ex. D, COL 243-244.

20. Mr. Rhoden admits that probable cause existed to arrest and charge him for (1) possession of not more than eight ounces of marijuana, pursuant to Lakewood Municipal Ordinance 9.43.030; (2) possession of drug paraphernalia, pursuant to Lakewood Municipal Ordinance 9.44.030; and (3) possessing/concealing illegal weapons pursuant to Lakewood Municipal Ordinance 9.70.030. Id. at Ex. E1, ¶¶ 1, 3, 5; E2, ¶¶ 1, 3, 5.

21. Mr. Rhoden was found guilty of violating Lakewood Municipal Ordinance 9.43.030, possession of not more than eight ounces of marijuana; Lakewood Municipal Ordinance 9.44.030, possession of drug paraphernalia; and Lakewood Municipal Ordinance 9.70.030, possessing/concealing illegal weapons (a switchblade). Id. at Ex. E1, ¶¶ 2, 4, 6; E2, ¶¶ 2, 4, 6.

### III. ANALYSIS

#### A. Constitutional Claims

Claim One alleges that "[t]he police officers' actions in assaulting the Plaintiff, placing him in custody, and bringing false allegations against him" were in violation of the plaintiff's

Fourth Amendment and due process rights.[3]  *Complaint*, p. 6.

### 1. Assault: Fourth Amendment

All claims that police officers used excessive force, deadly or not, in the context of an arrest, investigatory stop, or other seizure are governed by the Fourth Amendment's objective reasonableness standard.  Graham v. Connor, 490 U.S. 386, 395 (1989).  When determining whether the force used was reasonable under this standard, the court must perform "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396.  Application of the reasonableness test is dependent on the facts and circumstances of each particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than from hindsight.  Id.  Not every push or shove, even if it later may seem unnecessary, violates the Fourth Amendment.  Id.  Reasonableness embodies allowance for the fact that police officers are often forced to make split-second judgments about the amount of force that is necessary, often in circumstances that are tense, uncertain, and rapidly evolving.  Id. at 396-97.

---

[3]The defendants state that the only remaining constitutional claim is for excessive force in violation of the plaintiff's Fourth Amendment rights.  However, the plaintiff claims that he was assaulted and arrested in violation of his Fourth Amendment and due process rights.  *First Amended Complaint* [Doc. #30], p. 7, ¶ 23; *Order* [Doc. #51], p. 7.  Even though the defendants do not seek summary judgment on these claims, I address them in the interest of judicial economy.

The reasonable test is an objective one: the question is "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id.

Here, it is undisputed that at the time he encountered Mr. Rhoden, Agent O'Hayre was aware that drugs had been found in Mr. Rhoden's backpack; Mr. Rhoden was angry and agitated; he exhibited bizarre behaviors like pacing and waiving his arms in the air, slamming his trunk shut, throwing his keys, and yelling; Mr. Rhoden's tee shirt was not tucked in; when Agent O'Hayre told him to turn around and place his hands on his head, Mr. Rhoden immediately reached down to the front of his shorts with both hands; as Agent O'Hayre wrapped both of his arms around him to prevent him from pulling his hands out of his shorts, Mr. Rhoden said he "had one"; and Agent O'Hayre immediately brought Mr. Rhoden to the ground. Under these circumstances, it was reasonable for Agent O'Hayre to believe that Mr. Rhoden had his hands on a weapon and that he posed an immediate threat to Agent O'Hayre's safety. Agent O'Hayre's actions in grabbing the plaintiff and bringing him to the ground were reasonable to assure Agent O'Hayre's safety.

In addition, it is undisputed that Agent Ruybal did not grab the plaintiff's head or push it back into the hospital bead. There is no evidence in the record that Agent Ruybal used any force, much less excessive force, against the plaintiff. The Motion should be granted insofar as it seeks summary judgment in favor of the defendants on the plaintiff's Fourth Amendment claim for excessive force.

### 2. Arrest: Fourth Amendment

If a police officer has probable cause to believe that a person has committed or is presently committing a crime, the officer may effectuate a warrantless arrest without violating the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 7 (1985). "The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause." Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir. 1985) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." Karr, 774 F.2d at 1031.

Mr. Rhoden admits that probable cause existed to arrest and charge him for (1) possession of not more than eight ounces of marijuana, pursuant to Lakewood Municipal Ordinance 9.43.030; (2) possession of drug paraphernalia, pursuant to Lakewood Municipal Ordinance 9.44.030; and (3) possessing/concealing illegal weapons pursuant to Lakewood Municipal Ordinance 9.70.030.

Agent Cordova, who is not a party to this action, and not Agents O'Hayre or Ruybal, arrested Mr. Rhoden for Interference with a Police Officer. *Motion*, Ex. D, COL 243.

Mr. Rhoden's claim that Agents O'Hayre and Ruybal arrested and charged him in violation of the Fourth Amendment should be dismissed.

### 3. Due Process

"[T]he Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights." Albright v. Oliver, 510 U.S. 266, 272 (1994). However, the Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property.

U.S. Const. amend. XIV, § 1.

The Complaint summarily states that "[t]he police officers' actions in assaulting the Plaintiff, placing him in custody, and bringing false allegations against him were willful and wanton, and in violation of the Plaintiff's federally protected rights under the Fourth Amendment, the Fourteenth Amendment, the due process clause, and other civil rights, all guaranteed by the United States Constitution." It is unclear whether the plaintiff is claiming a violation of his substantive or procedural due process rights, or both. Moreover, the plaintiff does not identify the liberty or property interest of which he was deprived.

A complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted). The plaintiff's due process claim is devoid of factual detail.[4] Accordingly, the plaintiff's due process claim should be dismissed.

### 4. Qualified Immunity: Agent O'Hayre

Agent O'Hayre asserts that he is entitled to qualified immunity.[5] *Motion*, pp. 14-15. Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800,

---

[4] In addition, the Substantive Due Process Clause cannot form the basis for a cause of action where, as here, the Fourth Amendment "provides an explicit textual source of constitutional protection" against the defendants' behavior. Albright, 510 U.S. at 273.

[5] Agent Ruybal does not invoke qualified immunity.

818 (1982). Qualified immunity not only shields a defendant from unwarranted liability, it also protects the defendant from the burdens of defending a suit. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The qualified immunity defense is available only to government officials sued in their individual capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts a qualified immunity defense on summary judgment, a heavy two-part burden shifts to the plaintiff. Medina, 252 F.3d at 1128. The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right." Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted). The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue."[6] Id. "A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." Medina, 252 F.3d at 1128.

The plaintiff has not established that Agent O'Hayre's actions violated the Due Process Clause or the Fourth Amendment, nor has he shown that his due process and Fourth Amendment rights were clearly established at the time of Agent O'Hayre's conduct. Therefore, Agent

---

[6]The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S. 223, 236, (2009); Shroff v. Spellman, 604 F.3d 1179, 1188 (10th Cir. 2010).

O'Hayre is entitled to qualified immunity on these claims.

### B. State Law Tort Claims

The plaintiff's remaining claims are state law tort claims against Agents O'Hayre and Ruybal for false imprisonment; assault and battery; intentional infliction of emotional distress; and extreme and outrageous conduct.

The defendants move to dismiss the state law tort claims, arguing that the court lacks subject matter jurisdiction over these claims because they do not fall within any of the exceptions to immunity under the Colorado Governmental Immunity Act ("CGIA"). Because the issue is jurisdictional, I address this argument prior to the defendants' other arguments regarding the state law tort claims.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary

> judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted). The plaintiff has the burden to prove jurisdiction in the face of a challenge under Rule 12(b)(1), Fed. R. Civ. P. Trinity Broadcasting of Denver, Inc., v. City of Westminster, 848 P.2d 916, 925 (Colo. 1993).

Under the CGIA, public employees are immune to tort claims "unless the claim falls within one of the six limited areas for which immunity has been waived or unless the act or omission causing the injury was willful and wanton." Moody v. Ungerer, 885 P.2d 200, 204 (Colo. 1994); C.R.S. § 24-10-118. The six exceptions to immunity are (1) the operation of a motor vehicle owned or leased by a public entity; (2) the operation of any public hospital, correctional facility, or jail by a public entity; (3) a dangerous condition of any public building; (4) a dangerous condition of a public highway, road, or street; (5) a dangerous condition of any public hospital, jail, public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility; or (6) the operation and maintenance of any public water, gas, sanitation, electric power, or swimming facility by a public entity. C.R.S. § 24-10-106(a). The statute extends sovereign immunity to employees of a municipality. C.R.S. §§ 24-10-103(4)(a) and (5).

The CGIA does not define the term "willful and wanton." Moody, 885 P.2d at 205. However, the Colorado Supreme Court has looked to the definition of "willful and wanton" for purposes of exemplary damages ("conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the

14

rights and safety of others, particularly the plaintiff"); the definition as used in the automobile guest statute ("wholly disregardful of the rights, feelings and safety of others ... at times even imply[ing] an element of evil"); and the definition found in Black's Law Dictionary (an act or omission that is "not only negligent, but exhibit[s] conscious disregard for safety of others").

None of Mr. Rhoden's tort claims fall within the six exceptions to immunity found in section 24-10-106(a). Moreover, there is no evidence in the record to create a material fact dispute that the defendants' behavior was willful and wanton. To the contrary, Agent O'Hayre reasonably believed that Mr. Rhoden was reaching for a weapon. Far from acting heedlessly or recklessly, Agent O'Hayre brought Mr. Rhoden to the ground in order to ensure his safety.

Mr. Rhoden has failed to meet his burden of proving that his claims fall within one of the CGIA's exceptions to immunity and that this court has subject matter jurisdiction over his state law tort claims. I respectfully recommend that the Motion be granted insofar as it seeks dismissal of the plaintiff's state law tort claims for lack of subject matter jurisdiction.

## IV.  CONCLUSION

I respectfully RECOMMEND that Defendants Ryan O'Hayre and Stuart Ruybal's Motion for Summary Judgment [Doc. #77] be GRANTED and that summary judgment be entered in favor of the defendants on all of the plaintiff's claims against them.[7]

Dated March 4, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[7] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).